REVAUD R. PERRINE, APPELLANT, v. TOWNSHIP OF HANOVER, IN THE COUNTY OF MORRIS, AND JACOB STROH, RESPONDENTS.

Argued June 24, 1919—Decided March 1, 1920.

On appeal from the Supreme Court.

For the appellant, *Collins & Corbin*.

For the respondent Township of Hanover, *Nathaniel C. Toms*.

For the respondent Jacob Stroh, *King & Vogt*.

PER CURIAM.

This is an appeal from a judgment of the Supreme Court setting aside an election held under chapter 2, *Pamph. L.* 1918, commonly known as the Local Option act, on the day of the general election in New Jersey, 1918, in the township of Hanover, in the county of Morris, at which election the question whether the sale of intoxicating liquor as a beverage in that township should be prohibited was submitted to the voters.

The facts are not disputed. The proposition submitted was carried by a majority of forty-four votes. On election day, and for more than twenty days previous, there were seventy-five legal voters of Hanover township in the military service of the United States who could not, and did not, get home to vote in their respective districts; and no notice of any kind, no official ballots, envelopes, copy of act, or direction to voters were sent to such electors, as required by the statute, who, such electors, did not vote, and who were sufficient in number to have changed the result of the election.

A contest was instituted under section 25 of chapter 2, *Pamph. L.* 1918, upon the ground that the provisions of

chapter 150, *Pamph. L.* 1918, were not complied with, which last-mentioned act is a supplement to the act to regulate elections, the purpose of which is to afford every qualified elector of this state, who is in active service in the military forces of this state or of the United States, the right to vote at all elections, although he may be absent on election day from the election district in which he resides, whether he is within or without this state or the United States. Mr. Justice Parker, before whom the proceedings were had, set aside the election and allowed a *certiorari* out of the Supreme Court, which came on for hearing before Mr. Justice Minturn, who affirmed the order and dismissed the writ, but without any written opinion.

The questions raised in this case were passed upon by the Supreme Court in the case of *Scheible* v. *Hightstown,* 93 *N. J. L.* 69, and if rightly decided, control the one at bar. We think they were, and the judgment under review herein will therefore be affirmed.

KALISCH, J. (dissenting). The ground upon which the Supreme Court set aside the election as to the local option referendum is based exclusively on the failure of the secretary of state to comply with the provisions of chapter 150 of the laws of 1918, requiring him, among other things, to ascertain the post-office address of every elector in the military or naval service and to send such information to the county clerks who are to prepare ballots and mail them to the soldiers at their respective addresses, and that the absent soldiers appearing to be qualified electors "who had a right to vote at the aforesaid election were deprived of the right and opportunity to vote at said election, and that the number of qualified electors so deprived of the right or opportunity to vote, was sufficient to have changed the result of said election." The facts are undisputed. The learned justice, before whom the present case was heard, followed the decision of the Supreme Court in *Scheible* v. *Hightstown,* 93 *N. J. L.* 69, and this court has adopted the opinion in that case as a correct exposition of the

legal rule relating to the point decided. To this I cannot accede.

The constitutional declaration is, that in time of war no elector in the actual military service of the state or of the United States, in the army or navy thereof, shall be deprived of his vote by reason of his absence from such election district and the legislature shall have power to provide the manner in which and the time and place at which such absent electors may vote. * * *

In view of this mandate the legislature provided two methods by the act of 1918, *supra,* by which a soldier may vote. One method prescribed is, that he may vote an official ballot prepared by the county clerk, and the other that he may vote an unofficial ballot prepared by himself. Section 9 of the act makes this clear. This section prescribes, among other things, that "any such person in active service in the military forces of this state or of the United States who shall not have received an official ballot prior to the date of any primary, general or special election, shall be entitled to prepare and vote on the date of such election, but not before such date, an *unofficial* ballot, indicating thereon the candidates for whom he intends to vote and the offices for which such persons are candidates and the *propositions* upon which he intends to vote." The statute then directs that the unofficial ballot shall be put in a plain envelope, sealed and mailed to the secretary of state, &c.

In the Scheible case the Supreme Court (at *p.* 26) practically holds that a substantial compliance with the provisions of the statute relating to the requirement of the secretary of state to obtain the addresses of those in the military and naval service, &c., is requisite to the validity of the vote even at a general election, but that this substantial compliance is unnecessary to the validity of the vote "for local officers and members of the legislature."

The reason assigned for this distinction by the learned justice, as stated by him (at *p.* 27), is: "That the overturning of a governmental election, as distinguished from * * *

a sociological one, is a matter to which other considerations of grave public consequences apply, particularly the importance of having officers to carry out public affairs."

But, clearly, the constitutional provision and the statute makes no such distinction as indicated in the opinion. For, if the reason for drawing such a distinction be sound, then it follows as a logical sequence that a soldier may be deprived of his vote despite the constitutional and legislative mandates, when the election is for local officers and members of the legislature, but may not when the election concerns the adoption of a law which is to become a part of the governmental machinery. In plain words, according to the reasoning in the Scheible case, the provisions of the act are held to be mandatory as to an election on a local option referendum, but not as to an election held for public officers. Such a construction is violative of every canon of statutory interpretation.

The constitutional mandate that an elector in the military or naval service of the state or of the United States shall not be deprived of his vote by reason of his absence, &c., means no more than that such elector shall be afforded an opportunity to vote. This the legislature has accorded to such absent elector in the two ways which I have mentioned.

That the provisions of the act relating to certain duties to be performed by the secretary of state in order to obtain the soldier vote are not mandatory is made manifest by section 9.

The significance of the provision of section 9 is in the aspect that the legislature must have contemplated a situation where the officer entrusted with carrying out the provisions of the act relating to the voting of official ballots, either through inability or sheer neglect failed to obtain the names and addresses of the soldiers, and, therefore, the statute wisely provided for the voting of an unofficial ballot.

The prime object of the constitutional declaration, and the legislation following it, is to afford the soldier an opportunity to vote at any of the elections designated by the statute. It follows as a logical conclusion that as the legislature has provided a means by which the soldier who has not received an

official ballot may vote an unofficial one, it cannot be properly said that the failure to send an official ballot to the soldier *deprived* him of his vote. The question, it seems to me, narrows itself down to this: Were the soldiers afforded an opportunity to vote? If they were afforded the opportunity and did not avail themselves of it, an election fairly conducted on the question submitted to the people for decision should not be overthrown merely because of the absence of the soldier vote.

The local option referendum was submitted to the voters, together with the candidates for office at the general election. The day of general election is a fixture of the state government. In this state it is a legal holiday. Every citizen, therefore, will be presumed to have knowledge of the day when a general election will take place. A soldier, therefore, can easily obtain any information he desires beforehand as to who the candidates are to be voted for and what propositions are to be voted upon. But in the circumstance of a special election he is not afforded such an opportunity. The absent soldier cannot be fairly presumed to have knowledge of the day set for a special election, and, therefore, unless notice is given, he is practically deprived of his vote. *In re Holman,* 104 *Atl. Rep.* 212. In any view, it is wholly unimportant that the local option election does not lose its special character though held, in conjunction with the election of candidates for office, on the day of the general election. The statute expressly declares that the question of local option may be voted upon at a general or special election. It is clear if voted on at a general election the soldier has an opportunity to obtain the information, but such is not the case where a special day other than the day of general election is fixed for the submission of the proposition to a vote of the electorate.

In *Scheible* v. *Hightstown, supra,* the learned judge (at *p.* 25) in commenting upon the statute, says that it "expressed no view with relation to the soldier vote at a local option referendum held at the same time and voted on the same ticket with the general election."

I think the statute does express a view.  Section 9 expressly provides that the soldier may vote "an unofficial ballot, indicating thereon the candidates for whom he intends to vote and the offices which such persons are candidates and the *propositions* upon which he intends to vote." Could the legislature have expressed itself in clearer and more explicit language than when it said that the soldier may vote for the candidates and for the *"propositions"* submitted at the election? The term "propositions" is surely broad enough to include a local option referendum.

There has been no sound reason advanced why the absence of the soldier vote is sufficient to void an election as to a local option referendum, and insufficient to invalidate it as to the candidates elected at such general election.  I think the sound rule on the subject is expressed by Mr. Justice Trenchard in *Lindabury et al.* v. *Township of Clinton,* 93 *N. J. L.* 37, where he said:

"So, in the present case, even if the general election law requires notice of the local option referendum at a general election to be published, the failure to do so does not invalidate the result of the election when it appears that there has been a full and fair expression of the popular will, and I think that fact appears from the number of voters who voted upon the questions presented."

In the case *sub judice* it is not pretended that there was not a full and fair expression of the popular will, but the decision following the Scheible case holds that the failure to send official ballots to the soldiers deprived them of their votes, which might have changed the result of the election. In this view I cannot concur.  In order to find that the soldier was deprived of his vote, it must appear that he was not afforded an opportunity to vote.  As this was a general election, of which he must be presumed to have had knowledge, at which under section 9 the soldier had a right to vote an unofficial ballot, it is difficult to see how it can be properly said that he was deprived of his vote.

I vote to reverse the judgment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 12.

*For reversal*—KALISCH, J. 1.